## SULLIVAN *v.* FRINK & CO.

Where, in a case of arbitration, one of the arbitrators informed one of the parties, that no testimony would be received on a certain point in dispute, and in consequence of such information, the party did not attend with his witnesses; and where the arbitrators did admit evidence upon that subject from the opposite side, without any wrong intention, and without notice to the absent party; *Held,* That the evidence was improperly admitted, and the award was set aside.

An award can be set aside only for mistake, misconduct, partiality, or fraud, in the arbitrators.

In the legal idea of misconduct, an evil *intention* is not a necessary ingredient.

Where the act of the arbitrators prejudiced, or had a strong tendency to prejudice, the rights of one of the parties, even though no wrong intent entered into the act, the award should be set aside.

### *Appeal from the Dubuque District Court.*

THIS was an application to set aside an award made under the following agreement for submission:

"Whereas Michael Otis Sullivan was upset in a stage of John Frink & Co.'s, on or about the 15th day of March, A. D. 1854, under circumstances rendering the said John Frink & Co. liable to pay said Sullivan his legal damages; and whereas there is no dispute about the liability, and as the parties are mutually desirous of settling the amount of damages to be paid, in an amicable way, and without a resort to law, it is therefore agreed by the parties, that the question of damages shall be left to the arbitrament and award of Thomas S. Wilson, John W. Finley, and such third person as the said Wilson and Finley may call in to their assistance, who shall proceed to ascertain the damages aforesaid within ten days from the date hereof; and that the decision of said arbitrators, or a majority thereof, shall be final and conclusive. The said arbitrators to take such steps to arrive at the amount of damages to be paid to said Sullivan, as they may deem meet and proper, and are to consider all facts and circumstances connected with the case, as a

court and jury ought or could consider the same, legally. It is further agreed, that the said Frink and Walker shall pay the award of said arbitrators, within ten days after being notified thereof, and in case of default in said payment, the said arbitrators to render their award to the District Court of Dubuque county, and execution to issue thereon. The arbitration to be conducted without attorneys on either side." This agreement is signed by the parties and acknowledged. An award of $1,150 damages was made and returned to the District Court. The application to set aside this award, was based on sundry affidavits, the substance of which was as follows: .

The affidavit of R. J. Thomas, who was third arbitrator, called in by Wilson and Finley, shows that at the trial, a witness by the name of Briggs was introduced; that as near as deponent can remember, neither said Briggs nor the other witnesses were sworn; that Briggs testified that at the time the stage was upset, which occasioned the injury, the driver was racing horses with another stage, and driving very fast, and in a reckless manner; and that he drove on a sideling place, over a high elevation, elevating the wheels on one side two feet and more above the other, which occasioned the upsetting; that witness measured the rise of ground; that the testimony of this witness had a very material bearing on the mind of deponent, in forming his opinion in the amount of damages which was awarded to said Sullivan; that deponent, at the time, considered the actual damages to be rather slight, but supposed from the testimony of said witness, that the reckless driving and racing was a proper subject for exemplary damages, to restrain the stage company from like conduct: That deponent further says that there was a priest introduced by said Sullivan, who as this deponent believes, was not sworn, but made a statement which was taken as evidence by the arbitrators, in relation to the previous good health of Sullivan; that deponent did not know at the time of the arbitration, whether witnesses were to be introduced or not, or as to what points testimony was to be taken, though he noticed that Dr. Finley suggested something

against the propriety of the introduction of testimony; that this testimony had material influence on the mind of deponent, and he believes on the minds of the arbitrators, and he knows that it did on his.

The affidavit of James Huff, who was the agent of the defendant, shows in substance, that on the morning of the day of the arbitration, he procured two witnesses—the driver of the stage which was upset, and the driver of the one immediately behind it at the time of the accident; that he was not fully apprised of the manner the arbitration was to be conducted; that as the agent of Frink & Co. he called upon the attorney of defendant, to ascertain whether the testimony in relation to the circumstances of the upsetting of the stage, would be admissible, and that the attorney informed him he thought not, under his understanding of the submission, but for safety to call upon the arbitrators, and ascertain whether testimony on either side would; that in pursuance of this suggestion, he called immediately on Finley, one of the arbitrators, which was only a few minutes previous to their meeting, and said Finley informed deponent that the question in relation to the circumstances of the upsetting, would not be inquired into, and no testimony would be received thereon, either on the one side or the other; that in consequence thereof, affiant refrained from introducing said witnesses before the arbitrators, and he refrained for the sole reason that he was informed and believed, that it would be improper to introduce such testimony, and that the arbitrators would not receive it; and that no testimony whatever in relation to the upsetting, would be admitted from either side; but that affiant is informed and believes, the arbitrators did receive testimony from the other side in relation thereto—to wit: that Frink & Co.'s stage and another were racing at the time the stage was upset; that affiant could have proved by the above named witness this was not the fact, had he known that they could or would have been admitted; that affiant procured those witnesses to be ready with a view of contradicting the testimony which was really introduced. Affiant says, that after asking said

Finley whether testimony would be admitted, and receiving a reply in the negative, he asked him if the parties concerned were to be admitted, and he replied, no, they did not want anybody there at all, but themselves, and any physician that might call upon them; that affiant refrained from being present at the arbitration in consequence of this information; and that he was not aware until afterward, that said Sullivan had been admitted into the room, or that he had been allowed to introduce witnesses, and especially witnesses as to racing, or as to the circumstances of the upsetting. Affiant says that he believes that said Finley in giving him said information, acted in good faith at the time, but that the subsequent deviation from the intended course, had a prejudicial effect upon the interests of said Frink & Co., which was probably not contemplated, foreseen, or intended by said Finley.

The affidavits of John Collins, the driver of the coach in which Sullivan was injured, and of John F. Lane, the driver of a coach in company at the time, are also appended, to the effect that the stage in which Sullivan was at the time of the accident, was being driven slowly and carefully.

There is also the affidavit of T. S. Wilson, one of the arbitrators of record, as follows: "I have read the deposition of R. J. Thomas, and say that said arbitration was conducted fairly, and so far as I know, in accordance with the wishes of said parties; that said Briggs was introduced for the purpose of showing the manner in which the injury to said Sullivan was inflicted, in order that those arbitrators who were physicians, might judge of the permanency of the injury, and not for the purpose of showing the conduct of the stage driver; that whether the witnesses were sworn or not, affiant does not recollect, as the arbitrators understood that this was optional with them; that said. Thomas made no objections to any of the proceedings; that the amount of the award was fixed upon by said arbitrators because physicians who attended said Sullivan in his sickness, stated that said Sullivan would never recover from the injury; this affiant would, however, in justice state, that he now

thinks the amount of said award high, and that said injury was not so great as said arbitrators were led by the testimony to believe, but still said award was based upon uncontradicted testimony, and was the honest verdict of said arbitrators.

This latter affidavit was placed of record by Sullivan. The others were filed by defendant. The court below refused to disturb the award, and defendant appeals.

*Smith, McKinlay & Poor*, for the appellant.

Under the Code, § 2111, awards are placed upon the same footing as the verdict of a jury. Section 2110 provides for a rehearing, or a recommitment. Section 2112 makes affidavits part of the record to be sent up; in this case the affidavits are all included in the bill of exceptions. A fair construction of the three sections, clearly puts awards upon the footing of a verdict, with authority to the court to grant a new trial for any good and sufficient reason, and an appeal can be had to the Supreme Court from the decision.

This submission is substantially under section 2099 of the Code. The question, then, is whether there is substantial ground for a new trial? It is clear from the affidavit of Thomas, one of the arbitrators, that the arbitrators mistook the law in allowing evidence of racing, &c., to aggravate the damages; it is equally clear that smart money and exemplary damages were allowed for this, whereas the damages should have been limited to the actual injury and loss of Sullivan. See 2 Greenleaf's Evidence, § 253, and the note, where the matter is discussed at length in the note. Judge WILSON says in his affidavit, taken on the part of Sullivan, that he thought at the time they done right (we believe they all intended to do right), but he now thinks that they gave too much damages. Then, it is quite as clear from the affidavit of Huff, and of two other witnesses, that there was no racing; and that Frink, by his agent, was ready to disprove the testimony offered to show that there was, and was only prevented by the arbitrators.

There was, then, a wrong rule of law adopted in assessing

damages.   The arbitrators exceeded the law;·and, we say, they exceeded the terms of the submission, in going into the matter of exemplary damages; for it was only the actual injury received that they had any right to inquire into, either by the law or by the terms of the submission.   Any mere technical objection ought to have no weight in such an application as this; it is only substantial matter that should be regarded.   The mere fact that the witnesses were not sworn, who testified to the racing, would not, of itself, be sufficient ground for a new trial; but where the parties are not present, in consequence of the direction of the arbitrators, or the terms of the submission, and unsworn and untrue statements are made, which did have a material influence upon the amount of damages; taken as a whole, the case is a strong case for a new trial.   The sworn affidavits in this case, are to be taken as true, especially when there are two affidavits against the statement of one witness, who was not sworn.  . The admission of illegal testimony, which probably had an effect upon the jury, is a good cause for a new trial.

In this case the testimony was illegal and improper, and  ·. it is not necessary to show that all the arbitrators or jurors were alike influenced by it.   The mere admission of it raises the presumption that it had an influence; but the evidence shows that the fact that the stage was racing when it upset, had more influence with one of the arbitrators than did the real injury, and it is fair to presume it had its influence with the others.   It was the intent of the party who introduced it, that it should show a flagrant case, a great outrage, that called for exemplary damages.   The arbitrators think they gave too much, and we think the same thing, and hope the court will exercise the power given by the Code, of treating this precisely as an application for a new trial· on the verdict of a jury.

*Wm. Vandever* and *D. S. Wilson*, for the appellee.

1. The motion made to set aside the award, cannot be sustained, because it does not appear that there was fraud, mistake, or misconduct, partiality or favor, on the part of the

arbitrators. See *Merritt* v. *Merritt*, 11 Ill. 567; *Mitchell* v. *Bush*, 7 Cowen, 185; *Winship* v. *Jewett*, 1 Barr, 173; 9 Johns. 212; 14 Ib. 105; *Vaughn* v. *Graham*, 11 Missouri, 576; *Herrick* v. *Blair*, 1 Johns. Ch. 101; *Shermer* v. *Beale*, 1 Wash. 11; *Pleasants* v. *Ross*, Ib. 156; *Tidd* v. *Bailore*, 2 Johns. Ch. 551; *Brown* v. *Greene & Noyes*, 7 Conn. 524.

2. The exclusion of the parties by the arbitrators, was proper, and constitutes no ground for setting aside the award. Watson on Award, 117.

3. Arbitrators cannot impeach their award, even by their own testimony. 1 John. Ch. 101; 3 Paige, 137; 3 Esp. 38; Bul. N. P. 236; Peake's N. P. C. 6; 1 Esp. 143; 3 Ib. 113; 2 Ver. 717; 2 Johns. Ch. 349; 4 Johns. 487; 4 B. & Pull. 326; 4 Binney, 150.

4. Arbitrators are judges of the parties' own choosing; their proceedings and award are treated with great liberality; and even a mistake and doubtful point, often will not open an award. 1 Johns. Ch. 101; 2 Vern. 251; Ib. 705; 1 Atk. 63; 3 Ib. 486; Ib. 529; Ib. 644; 1 Ves. jr. 369; 2 Ib. 22; 13 East, 357.

5. Excess in the amount of award is no ground for setting it aside, unless it be so great as to indicate fraud. 4 and 5 Kentucky, 228; *Underhill* v. *Van Cortland*, 2 Johns. Ch. 339.

6. Change of opinion by one or all of the arbitrators, after award rendered, cannot affect the award. See *Cleaveland* v. *Dixon*, 4 J. J. Marsh. 228.

WOODWARD, J.(1)—This award cannot be sustained. One thing in the case seems difficult to understand. One of the affidavits says, the testimony of Briggs " was introduced for the purpose of showing the manner in which the injury was inflicted, in order that those arbitrators who were physicians, might judge of the permanency of the injury, and not for

---

(1) This cause having been argued before STOCKTON, J., came upon the bench, he took no part in the decision. ISBELL, J., left the bench before its decision.

Sullivan v. Frink & Co.

the purpose of showing the conduct of the driver." Now, the article of submission itself states the manner. It says, "Whereas Michael Otis Sullivan was *upset* in a stage of John Frink & Co., under circumstances rendering John Frink & Co. liable to pay said Sullivan his legal damages, and whereas there is no dispute about the liability," &c. There was, therefore, no testimony needed to show the manner, if this merely was wanted. And if anything else—if any circumstances were wanted—both parties should have been allowed to be heard in testimony. The plaintiff has cited law, and supported it by sufficient authority, which we have no disposition to controvert.

The principal proposition is, that an award can be set aside only for mistake, misconduct, partiality, or fraud, in the arbitrators. But it must be remembered, that in the legal idea of misconduct, an evil intention is not a necessary ingredient. The question is, whether that has not been done which prejudiced, or had a strong tendency to prejudice, the rights of one of the parties, even though no wrong intent entered into it. We think something of this character has been done. One of the parties was informed that no testimony, or none on a certain question, pertaining to the matter, would be heard. But such testimony was heard. It is immaterial that the representation was made innocently or ignorantly. The *fact* was otherwise; and in our opinion, it is immaterial that the mind of the arbitrator, Wilson, was not influenced by it. It is evident that Thomas was, and we are left in uncertainty as to Finley, the other arbitrator. If this testimony had not been heard, Thomas would not have assented to this award; and we cannot say but that he might have influenced the others to a different conclusion. It is not said that arbitrators must in all cases hear testimony, nor what they must hear, but only that if they receive it on one side, they must on the other. If it is provided that the arbitrators may take such steps to arrive at the amount of damages as they may deem proper, this does not mean that they may violate the principles of justice. There was misconduct or partiality in the matter of fact, or

the result, although none in the motive. The case of *Walker* v. *Frobisher*, 6 Vesey, 70, is very analogous. The chancellor's opinion indicates the facts sufficiently. He says: "The arbitrator had examined different witnesses at different times, in the presence of the parties. He recommended to them not to produce any more witnesses. After that, he heard others on one side. He swears it had no effect on his award. I believe him. He is a most respectable man. But I cannot, from respect for any man, do that which I cannot reconcile to general principles."

The language of the statute, that the award "shall have the force and effect of the verdict of a jury," must not be stretched too far. Its principal intent is that judgment may be rendered upon it, as upon a verdict. This is manifested by the words which immediately follow in the same section: "Judgment may be entered, and execution issued accordingly."

                                     Judgment reversed.