ORIENT INS. CO. OF HARTFORD, CONN., et al. v. HARMON et al.  (No. 7266.)†

(Court of Civil Appeals of Texas.  Dallas. May 8, 1915.  On Motion for Rehearing and Additional Findings of Facts, June 5, 1915.)

1. TRIAL ☞169—DIRECTED VERDICT.

A complaint which alleged that defendant insured plaintiff's house, that the house was totally destroyed by fire, and that plaintiff had complied with all the requirements of the policy as to proof of loss, but that nevertheless defendant refused to pay the loss, and to avoid the expense of litigation, plaintiff agreed to submit the amount of the loss to appraisers, as provided in the policy, that the appraisers awarded a certain amount to plaintiff, but that defendant had not paid that amount, wherefore plaintiff prayed that he recover the amount of the award, which was less than the face of the policies, states a cause of action on the policies, as well as one on the award, and defendant is not entitled to a directed verdict under Acts 33d Leg. c. 127, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1829), providing that any facts specially pleaded by the defense that are not denied by the plaintiff shall be taken as confessed, because of plaintiff's failure to deny the new matter alleged in the answer to avoid the award.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 381–387, 389; Dec. Dig. ☞169.]

2. INSURANCE ☞574—AWARD OF APPRAISERS—ACTION—PLEADING.

In an action on an award by appraisers appointed under a fire insurance policy, proof that the award was excessive because certain items were included therein twice is not sufficient to annul the award, where there was no pleading raising that issue.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432, 1434; Dec. Dig. ☞574.]

3. INSURANCE ☞572—AWARD OF APPRAISERS—PROCEDURE—NOTICE AND EVIDENCE.

Where neither the provisions of a fire insurance policy for the appointment of appraisers to determine the loss, nor the agreement appointing them, prescribed the procedure before them, such procedure is left to their discretion, and their failure to give the insurer notice of the hearings, and an opportunity to introduce evidence, does not render the award void.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1422, 1423, 1427, 1429; Dec. Dig. ☞572.]

4. INSURANCE ☞572—AWARD OF APPRAISERS—PROCEDURE—NOTICE AND EVIDENCE.

If such appraisers were subject to the common-law rules of arbitration, their failure to give such notice and hear such evidence does not render the award void, where there was no showing that the insurer, although its agent knew that the appraisers were engaged in their work, made any request for permission to submit evidence.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1422, 1423, 1427, 1429; Dec. Dig. ☞572.]

5. INSURANCE ☞572—AWARD BY APPRAISERS—UMPIRE—DUTIES.

Where a fire insurance policy provided for an appraisement by appraisers appointed by each party, the two appraisers to appoint an umpire to whom they should submit their differences on failing to agree, and the agreement appointing the appraisers made no provision as to the umpire, the latter was not limited to determining the differences between the other appraisers, but could fix an amount independently thereof, and exceeding the amount fixed by either appraiser, where thereafter both appraisers agreed to such amount and signed the award.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1422, 1423, 1427, 1429; Dec. Dig. ☞572.]

6. INSURANCE ☞574—AWARD BY APPRAISERS—PRESUMPTIONS—VALIDITY.

Where the award of fire insurance appraisers does not show that they allowed anything for depreciation of the property, but does not conclusively show that they failed to make such allowance, the award will be sustained, since it is supported by every presumption in its favor not contradicted by the proof.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432, 1434; Dec. Dig. ☞574.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

**7. INSURANCE ☞574—AWARD BY APPRAISERS —REVIEW BY COURTS.**

An award by appraisers appointed under the provisions of a fire insurance policy to determine the loss will not be disturbed for every error of law or fact, but only where fraud, partiality, misconduct, or gross mistake is shown.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432, 1434; Dec. Dig. ☞ 574.]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Separate actions by George A. Harmon and another against the Orient Insurance Company of Hartford, Conn., and the Palatine Insurance Company, Ltd., of London, England, were consolidated for trial. Judgment for the plaintiffs, and defendants appeal. Affirmed, and motion for rehearing and for additional findings of fact overruled.

Crane & Crane, of Dallas, for appellants. W. H. Clark and Harmon & Harmon, all of Dallas, for appellees.

TALBOT, J. The appellees, George A. Harmon and G. H. Schoellkopf, instituted two separate suits against the appellants, Orient Insurance Company of Hartford, Conn., and Palatine Insurance Company, Ltd., of London, England, the former having been filed in the district court for the Forty-Fourth judicial district of Texas, and the latter in the district court for the Fourteenth judicial district. The suit against the Palatine Insurance Company of London, England, by consent, was transferred to the district court for the Forty-Fourth judicial district, and by agreement was consolidated for the purpose of trial with the suit against the Orient Insurance Company. There is no difference in the allegations of the two petitions filed in said suits. In each it is alleged, in substance, that the defendant therein named was engaged in the fire insurance business in the city of Dallas, Dallas county, Tex.; that on the 17th day of April, 1912, the plaintiff George A. Harmon owned in fee simple a certain dwelling house situated in the city of Dallas, and known as No. 2918 Greenwood Street; that on said date each of the defendants issued and delivered its policy of insurance to the said George A. Harmon, whereby, in consideration of the payment of the premiums charged, the defendant insured said Harmon—

"against loss or damage by fire to the amount of $3,000 upon his said dwelling, for the period of five years; that thereafter on the 12th day of April, 1913, said dwelling house was practically totally destroyed by fire; that said house was of the value of $10,000; that plaintiff Harmon gave to the defendant due and proper written notice and proofs of the fire and loss in accordance with the terms and condition of the policy; that defendant, though often requested, had failed and refused to pay the loss to plaintiff's damage in the sum of $3,000."

The petition in each case further alleged that the policy therein sued on contained what is known as a "mortgage clause" in fa-

vor of the plaintiff G. H. Schoellkopf, stipulating and agreeing that said loss or damage, under and by virtue of said policies, shall be payable to said G. H. Schoellkopf, as his interest may appear, and that his interest in said insurance amounted to $5,-160, the unpaid purchase money due him upon the premises insured; that after the defendant was given notice and proofs, of the fire and damage sustained by plaintiffs in said sum of $3,000, the defendant, on, to wit, the 30th day of June, 1913, pretended to believe that it was not liable to plaintiffs, or either of them, in the sum of $3,000, and insisted that the same was an excessive claim, and demanded, under and by virtue of one of the many terms and conditions of its policy, that the amount of its liability on its said policy should be determined by an appraisement as provided for in their said policy; that plaintiffs consented to said demand in order to save the loss incident to the delay and expenses incident to the cost of litigation, and the agreement for submission of plaintiffs' claim to appraisers was duly drawn on one of the defendant's forms, and executed on June 30, 1913, by the plaintiff Harmon and the defendant, as provided for by said policy, and H. P. Self and J. Dawson Matthews, both of Dallas, Tex., were named and appointed appraisers to appraise the "sound value" and the loss and damage sustained by plaintiffs, and to return an award accordingly; that as provided for in said policy, said two appraisers agreed upon selected and appointed an umpire, S. P. Brickey, to submit to him their differences, if any; that said skillful, honest, and competent appraisers proceeded to perform, and did perform, their duties aforesaid, and on August 15, 1913, without dissent, said two appraisers and umpire finished their said appraisement and rendered and each signed their award as follows, to wit: Finding that the "sound value" of plaintiff Harmon's said dwelling house, when burned, was $10,000, and that plaintiffs' loss or damage by said fire to said dwelling house was $5,341.85; and thereupon the plaintiffs demanded of the defendant the payment of the sum of $2,670.90, the defendant being liable to the plaintiffs for one-half of the total loss, according to the terms and provisions of said policy, whereby the defendant became liable and justly indebted to the plaintiffs upon said award, and in the alternative for the actual value of the loss by fire, in the said sum of $2,670.90, with interest thereon from August 15, 1913, until paid, at the legal rate of 6 per cent. per annum, yet, though often demanded, defendant has refused, and still does refuse, to pay the same, or any part thereof, to plaintiffs' actual damage $2,-900. The prayer of each petition is that the plaintiffs therein—

"recover judgment for himself and for the use and benefit of the plaintiff G. H. Schoellkopf, for the sum of $2,670.90, with legal rate of 6

per cent. interest per annum thereon from August 15, 1913, until paid, and for costs of suit, and for such other and further relief, general and special, legal and equitable, as to the court may seem just and proper."

The defendant in each suit, by answer filed therein, admitted that it issued the policy described in the plaintiffs' petition; that on the 12th day of April, 1913, the property insured was damaged by fire, but denied that it was practically totally destroyed by fire. On the contrary, each averred that the building insured was not destroyed, but that it was damaged to about the extent of $2,500. Each further admitted that the extent of plaintiffs' loss could not be agreed upon, and that plaintiffs and defendant entered into the agreement to appraise the loss as alleged by plaintiffs; that thereafter the appraisers and umpire rendered an award signed by all of them, wherein they found that the sound value of the property insured was $10,000, and the amount of loss and damage thereto by fire was $5,341.85. Defendants, however, each alleged that the award was not binding upon them, for reasons which will be sufficiently indicated for the purposes of this opinion in the discussion of the questions arising on the appeal.

Defendants further averred that at the date the policy in suit was issued, and at the time of the fire, the property was occupied and used as a rooming house; that had it known that the property was used as a rooming house, this defendant would not have issued the policy sued on, because it avers that from its experience in the underwriting business such class of risks was an undesirable one, and the same was on its prohibited list. In addition to this defendant avers that the rate upon rooming houses was something over twice as great as that of a private dwelling. Wherefore it says that said policy was null and void, both as to plaintiff George A. Harmon and plaintiff G. H. Schoellkopf.

There was a cross-action also filed by each of the defendants; but, as we view the case, the matters therein alleged need not be stated. After the jury had been selected and the pleadings had been read defendants presented a motion, asking the court to peremptorily instruct the jury to find for the defendants, because under section 3, c. 127, Acts 33d Leg. (Vernon's Sayles' Ann. Civ. St. 1914, art. 1829), plaintiffs not having denied the allegations contained in defendants' answers as to the matters pleaded as to the award not being binding, and there being no averment in any pleading of the plaintiffs that they did not have information sufficient to form a belief, the matters alleged in defendants' answers should be taken as confessed, and, the suit being upon an alleged award, there was nothing to submit to the jury. The court overruled the motion, to which each of the defendants excepted. The case was submitted to the jury upon a general charge, and the jury found a verdict in favor of plain-

tiff George A. Harmon for the sum of $5,341.85, with 6 per cent. interest thereon from August 15, 1913, one-half of which sum was adjudged against each of the defendants, and that plaintiff George A. Harmon recover of this sum $5,000 for the use and benefit of plaintiff G. H. Schoellkopf, and judgment was entered accordingly. Defendants' motion for a new trial having been overruled, they appealed.

[1] It is first assigned that the court erred in overruling the defendants' motion for an instructed verdict in their favor. The contention is that the plaintiffs based their suits upon the award alleged by them, and the defendants having pleaded in their answer facts which, as a matter of law, showed that said award was not binding upon them, and the plaintiffs having failed to deny the allegations of defendants' answer, and having failed to allege that they did not have information sufficient to form a belief in regard thereto, as required by section 3, c. 127, Acts 33d Leg., such alleged facts were confessed, and the court should have peremptorily instructed the jury to find for the defendants. Manifestly this contention is predicated upon the assumption that the plaintiffs based their suit, and sought to recover, solely upon the alleged award. This we believe is an erroneous assumption. The fair construction of plaintiffs' petition, if it does not so clearly appear from its language, is that it alleges two separate and distinct causes of action in the alternative; one upon the award of the appraisers, and the other upon the insurance policy issued to the plaintiff Harmon for the amount of the damages alleged to have been sustained by reason of the fire that injured his building. Under our system of pleading such course was open to him, and it is a common practice for the plaintiff, in stating his case, when he deems it necessary, "to frame his petition with a double aspect," in order to place himself in a position to obtain alternative relief. Such evidently was the purpose of the pleader in drafting plaintiffs' petition in this case, and we think the allegations in the petition, if true, authorized a recovery upon either the award of the appraisers and umpire, or upon the policies. If this view of the petition is correct, then for that reason, if no other, there was no error in overruling defendants' motion requesting the court to instruct a verdict in their favor.

The assignments of error from the third to the ninth, inclusive, complain of the court's refusal to give defendants' special charge No. 1, which directed the jury to return a verdict for the defendants. It is urged that this was error for the reason that the award was not binding upon the defendants, because: (1) The "undisputed evidence showed that said award was uncertain in that the amounts agreed upon by the two arbitrators in several particulars, particularly in the items of flooring and roofing, were likewise

included in the amount found by the umpire, and that the total found by the umpire and the total found by the two appraisers were added together, which constituted the award, and that said award was therefore excessive in that the amount of damages upon the items aforesaid was included twice in the award;" (2) because, "under the terms of the agreement to arbitrate, it was the umpire's duty to settle the differences between the two appraisers; that upon the items that the two appraisers could not agree as to the amount of damage the umpire did not determine the difference between the two appraisers, but disregarded their findings as to the amount of the loss and damage, and did not consider them at all, but made up an independent valuation of his own which, in the items of floors, mantel, upstairs, roof, dining room chimney, plumbing, furnace, foundation, and painting exterior, was several hundred dollars in excess of the amount of damage found and estimated by the highest estimate made by either of the appraisers;" (3) because "the undisputed evidence shows that the arbitrators did not notify these defendants, or either of them, when they would meet to appraise the loss, although in law these defendants were entitled to reasonable notice of the time and place of the meetings of the arbitrators;" (4) because "the undisputed evidence shows that these defendants, or either of them, were not given an opportunity to appear before the arbitrators and present evidence as to the amount of the loss and damage to the property, although in law they were entitled to appear before said arbitrators and to offer evidence thereon;" (5) because, "the undisputed evidence shows that these defendants were not advised that the appraisers had failed to agree, nor were these defendants notified of the time and place when the umpire would take up and determine the question of the differences between the two appraisers;" (6) because, "the undisputed evidence shows that these defendants were not given an opportunity to appear before the umpire and appraisers and offer evidence as to the extent of the loss and damage, although the defendants had expert witnesses who were ready and willing to testify concerning these matters;" and (7) because "under the terms of the appraisal agreement and conditions of the policies sued on, it was the duty of the appraisers and umpire, in estimating the damage to the property insured, to take from the actual case value of said property the amount of the depreciation; that the undisputed evidence showed that said property had greatly depreciated in value, but that in estimating the damage to the property, the appraisers and umpire made no allowance therefor." Neither of the reasons here assigned would have justified the court in giving the peremptory instruction requested.

[2] It was alleged as a ground for annulling the award that it was uncertain, in that the amounts agreed upon by the two arbitrators in estimating the damage to the floors and roof of plaintiffs' building, or to any other item, were included in the amount found by the umpire, and that therefore the award was excessive. There was testimony given by J. Dawson Matthews, one of the appraisers, to the effect that he and the other appraiser, H. P. Self, estimated the damage to the upstairs floors of the building at $87.60, and it also appears that the umpire Brickey estimated the damage to the floors of both the upper and lower stories of the building at $210, and that the two amounts were included in the award, but in the absence of pleadings raising such an issue, the facts in relation thereto, though proven, could not be considered as a ground for declaring the award invalid. To be available any matter of defense must be alleged, as well as proved.

The other grounds upon which appellants base their asserted right to the peremptory instruction in question are equally unavailing, but for other and different reasons. The agreement to arbitrate their differences by the appellants and appellees was not entered into under the provisions of our statute. It was made in conformity to provisions of the policies sued on, and does not require the appraisers to notify the appellants "when they would meet to appraise the loss" in question, or to advise them of their failure to agree, in the event of such failure, and of the time and place when the umpire would take up the question of differences between the appraisers, and to thereby afford them an opportunity to appear and present evidence as to the amount of the loss and damage to plaintiffs' property. The provision of the contract relating to the matter is as follows:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire, the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss."

And the agreement for arbitration entered into under this provision, after stating the substance of said provision and that a disagreement had arisen between the parties as to the amount of the loss to the plaintiffs' property by reason of the fire which occurred April 12, 1913, and that the insurance company had demanded an appraisement under the terms of the policy, contains the following stipulation:

"It is hereby agreed by and between said insurance company and said assured under the said demand that H. P. Self of Dallas, Texas, and J. Dawson Matthews of Dallas, Texas, are hereby appointed as appraisers to appraise the sound value and the loss and damage and return an award in accordance with the terms and conditions of said policy."

[3] From a glance at the provision of the policy and the stipulation in the agreement quoted, it will be seen that in neither is the method or procedure to be pursued by the appraisers in arriving at the extent of the damage to plaintiffs' property and the amount of his loss, or by the umpire in the event he was called upon to act, prescribed. So that, looking alone to the provisions of the policy and of the agreement to arbitrate, we find that the manner and means of ascertaining the extent of such damage and loss by the appraisers, and of determining the extent of the damage and loss to those items of property about which the appraisers disagreed by the umpire, is left entirely to their candid judgment, and if such provisions control, the duty did not devolve upon the appraisers and the umpire to give to the appellants the notice and opportunity to be heard which appellants claim should have been given them, and the failure to give such notice and opportunity furnishes no legal ground for setting aside the award.

[4] But if the appraisers and umpire, notwithstanding the silence of the agreement to arbitrate with respect to the method and procedure to be pursued in arriving at the loss and damage to plaintiffs' property, were subject to the principles governing common-law arbitration, still under the pleadings and evidence in the case the award should not be declared void. There is neither allegation nor proof that appellants asked and were denied permission by the arbitrators to be heard by witnesses or otherwise, nor is there any evidence that would justify the conclusion that the appraisers or the umpire acted secretly in any respect in the discharge of their duties to the detriment of appellants, or that either of them was otherwise than fair and impartial in rendering the award made by them. No undue haste in arriving at the conclusion reached by them, or disposition on their part to deny a full and fair hearing of any testimony appellants may have desired to offer, is shown. Indeed it is fairly deducible, if not obvious, from the agreement to arbitrate and the action of all the parties at interest, that it was not contemplated that the appraisers would conduct a trial and notify the parties of the time and place thereof, to the end that they might have an oral examination of witnesses touching the matters in controversy, or that, if ever contemplated, the failure of the appraisers to so conduct their investigation was acquiesced in and approved. That appellants knew that the arbitrators were inquiring into the loss and damage to plaintiffs' property, and failed to request a hearing and examination of the witnesses, cannot be questioned. In one place in his testimony, the appraiser, Matthews, says, without contradiction, that he notified Mr. Bucklew, who was the adjuster and representative of the appellants, when the appraisers would meet, and that he discussed the plaintiffs' claim; that he (Bucklew) appeared before them in his (Matthews') office and discussed the matter with them fully. So it occurs to us that if appellants have suffered from a failure to get the testimony of certain witnesses before the appraisers, it is not attributable to any act or omission on the part of the appraisers, but to their own want of attention in not notifying the appraisers of the existence of such testimony and a desire to have it placed before them. Rector v. Hunter, 15 Tex. 380. It is an undisputed fact that, although the appraisers, to the knowledge of appellants, were engaged several weeks in investigating the damage and loss to plaintiffs' property and in reaching a conclusion as to the amount thereof, appellants did not, at any time, offer to bring before them a single witness, or suggest the name of one whose testimony might be obtained. If, under the circumstances, the mere failure of arbitrators, selected and authorized to act as were the arbitrators in this case, to notify the complaining party when they would meet to appraise the loss would constitute a valid ground to vacate and set aside their award, the facts and circumstances shown by the record before us presents, in our opinion, no such case. The law favors arbitrations, and every reasonable intendment will be indulged in support of them. The cases cited by appellants were decided upon facts materially different from the facts in the instant case, and therefore do not control its decision.

[5] Concerning the proposition that the award is not binding upon appellants because the "umpire did not determine the differences between the two appraisers, but disregarded their findings as to the amount of the loss and damage and made up an independent valuation of his own" which, in certain items, was largely in excess of the amount of damage found by the highest estimate made by either of the appraisers, we think it may safely be said that in so acting the umpire did not exceed the authority conferred upon him. Neither the agreement to arbitrate nor the law made it his duty to adopt the findings of one or the other of the appraisers as to the amount of the loss and damage to items of property about which they differed, or to assess the amount thereof at some sum not to exceed the highest estimate placed upon any particular item by either, as seems to be the contention of appellants. On the contrary, we think the duty of the umpire under the terms of the arbitration agreement, or as imposed upon him by law, was to ascertain and determine, in the exercise of his own best judgment, the actual amount of the loss and damage to any item of property about which the appraisers had disagreed, independent of the findings of the appraisers, or either of them. This is what the umpire did, according to the record before us, and both of the appraisers agreed to his findings and signed the award, which included them.

[6] Respecting the contention that the un-

disputed evidence showed that the property covered by the policies, and particularly several of the items thereof, had depreciated greatly in value, but that the appraisers and umpire, in estimating the loss and damage to the property, made no allowance for depreciation, we deem it sufficient to say that if the evidence is insufficient to show that the appraisers and umpire did in fact allow for depreciation in the value of the property in estimating the damage and loss thereto, it does not affirmatively show the contrary, and as the court must support the award "by every presumption in its favor not contradicted by the proof," appellants are in no position to insist that the award is not binding upon them because appellees' property had depreciated in value and no allowance was made therefor in determining the amount of their loss.

[7] Now, to the foregoing remarks, and as applicable to all of appellants' propositions here under discussion, it may be added, as was well said in Payne v. Metz, 14 Tex. 56, that:

"The court should interpose in this class of cases with great caution, and never, except in a case of urgent necessity, to prevent the consummation of a fraud, or some great and manifest wrong and injustice. It is not every error or mistake of law or fact which will warrant the setting aside of an award. If it were, there would be but few awards made which would stand the test of judicial investigation; for they are most frequently made by men not learned in the law, nor skilled in judicial proceedings. * * * The law therefore requires that, to authorize the interference of a court of equity in the case of awards, there must appear to have been fraud or partiality, misconduct or gross mistake, committed on the part of the arbitrators, to the manifest injury of the party complaining."

No such fraud, partiality, misconduct, or gross mistake as was here contemplated by the Supreme Court characterized the action of the appraisers in this case, and their award is final and conclusive as to all matters embraced therein.

But aside from all of the above considerations, we think the special charge for a directed verdict was properly refused because it ignored that branch of the plaintiffs' case founded on the contracts of insurance without reference to the award. The allegations of the petition and the evidence adduced in support thereof were sufficient to authorize and support a recovery either on the award or policies of insurance, and it would have been positive error to have given the peremptory charge in question upon the theory that plaintiffs' suit was based solely upon the award, and not binding upon defendants for the reasons urged by them. The verdict of the jury was a general one, and, so far as the record shows, may have been based upon plaintiffs' alleged cause of action on the insurance contracts and the evidence adduced in support thereof.

The other assignments of error have been disposed of adversely to the appellants' contention by what we have already said, and need not be further noticed.

The judgment of the court below is affirmed.

## On Motions for Rehearing and Additional Findings of Fact.

The appellants' motion for a rehearing has failed to convince us that we erred in the conclusions heretofore reached and set forth in our original opinion, and will therefore be overruled. Appellants' motion for additional findings of fact will also be overruled, but a statement made by the witness Matthews, which does not appear in our original opinion, will be given. In our original opinion it is said:

"In one place in his testimony the appraiser, Matthews, says, without contradiction, that he notified Mr. Bucklew, who was the adjuster and representative of the appellants, when the appraisers would meet, and that he discussed the plaintiffs' claim; that he (Bucklew) appeared before them in his (Matthews') office and discussed the matter with them fully."

This statement was made by the witness, as said in one place in his testimony, but in another place in his testimony he said:

"We did not notify Mr. Harmon or Mr. Bucklew, or any representative of the insurance company, as to when we were going to meet and try to appraise the list."

This additional statement of the witness, it occurs to us, should have been quoted in our original opinion; and, as it was omitted, we now give it for what it is worth. It does not, however, in our opinion, materially affect the questions involved.