ALBERT G. DENNIS and ORRIN E. RUNYON

*v.*

STANDARD FIRE INSURANCE COMPANY.

[Submitted April 11th, 1919.  Decided April 29th, 1919.]

1. Where a fire loss was submitted to appraisers who appointed an umpire to decide upon matters of difference only, items on which the appraisers agree should not be submitted to the umpire.

2. When differences between the appraisers are submitted to the umpire, he is not bound to coincide with the opinion of either appraiser, nor to confine himself within the limits of the appraisers' estimates, but is required to use his own best judgment and make an independent valuation.

3. Where an umpire or arbitrator exceeds his authority, the effect of his act is the same whether it was done consciously or by mistake, as in either case his award is void for misconduct. In the legal idea of misconduct, an evil intention is not a necessary ingredient.

4. Because the umpire did not perform his legal duty in one instance, the whole award need not be sent back to the appraisers, but may be corrected by this court.

On bill, &c.

*Mr. Schuyler M. Cady,* for the complainants.

*Messrs. Raymond, Mountain & Marsh,* for the defendant.

BACKES, V. C.

This suit is to set aside an appraisement made under the provision of a fire insurance policy. The complainants operated a small printing plant in Newark, which was damaged by fire. They were insured for $3,000, and being unable to agree with the insurance company upon the amount of loss, the dispute was submitted to appraisers who appointed an umpire "to decide upon matters of difference only, as provided for in the within agreement." The articles of submission provided that the appraisers

"shall together appraise and estimate the sound value of the below-described property, and the amount of loss and damage thereon caused by the fire which occurred on the 5th of November, 1917. Provided that the said appraisers shall first select a competent and disinterested umpire, who shall act with them in matters of difference only. The award of said appraisers and umpire (if the umpire be called upon to act), or any two of them, made in writing, in accordance with this agreement, shall determine the amount of said sound value, and of said loss and damage, as provided by the policy or policies of said company or companies."

The complainants submitted to the appraisers a list of one hundred and forty-seven articles claimed to have been damaged or destroyed. The appraisers agreed upon the sound value, except as to one item, at $3,075.05. Upon the loss they agreed as to forty-two, and disagreed as to the remaining one hundred and five items; and then they called in the umpire, to whom they submitted their differences. The three worked together in an effort to reach an agreement, but without success. The umpire

and the appraiser selected by the company appraised the loss at $931.38, and signed the award. The complainants' appraiser declined to sign it. The complainants claim to have suffered a loss of $1,709.17, and seek to set aside the award on the ground of alleged misconduct on the part of the umpire, in that he estimated the loss upon seventeen articles at figures lower than those reached by either of the appraisers, and that he disregarded the sound value of one item agreed upon by the appraisers. The bill alleges more than technical misconduct. It charges that the company's appraiser was not impartial, that he and the umpire, debauched by bribery, conspired to defraud the complainants, and that moved by illicit considerations, the umpire violated his duty in the two instances just adverted to. The alleged corrupt practices of the insurance company, its appraiser and the umpire are ambiguously and insidiously averred and are calculated to give the impression that the award, as a whole, is tainted with, and the product of, fraud; but upon a careful reading, it will be seen that the intemperate and extravagant language charges no more than that the umpire was fraudulently and corruptly induced to misconduct himself in respect to the two things complained of. If the pleader intended that the charges should have a broader reach he has failed. However, upon this aspect of the case, and in justice to the gentlemen whose characters have been so unjustifiably assailed, it ought to be stated that the allegations find no support whatever in the testimony and that they were abandoned, as unfounded, by the complainants' counsel at the conclusion of the hearing. There is not a jot of evidence of unbecoming conduct upon the part of either the appraisers or the umpire to excite the slightest suspicion that any of them approached their task with ulterior motives, and the impression made on the mind by the testimony is that the three gave careful consideration to the conflicting claims of the parties, and, conscientiously, reached their verdicts. It was hardly to be expected that the appraisers would agree in all matters. They were partisans, within bounds, but were, nevertheless, unbiased and unprejudiced and disinterested within the meaning of the contract of insurance. Their attitude was that approved of by Vice-Chancellor Pitney in *American Central In-*

surance Co. v. Landau, 62 N. J. Eq. 93, where he said that "the appraiser chosen by each party is supposed and expected, in a restricted sense, to represent the party appointing him, and within reasonable limits to see to it that no legitimate consideration favorable to the party so appointing him is overlooked by the other appraiser." The umpire, like the appraisers, is a business man of excellent character and standing, and was peculiarly qualified by long experience in the printing trade, to pass judgment upon the value of the articles submitted. The elimination of the charges of fraud does not, however, end the complainants' case. The question still is, Was the umpire guilty of misconduct in appraising the loss on the seventeen items at figures beyond the limits fixed by the appraisers and in discarding the estimates of the appraisers as to the sound value of one of the articles? To this proposition counsel addressed themselves in their arguments and briefs. "In the legal idea of misconduct, an evil intention is not a necessary ingredient." *Sullivan* v. *Frink & Co., 3 Iowa 66*. Where an umpire or arbitrator exceeds his authority, the effect of his act is the same whether it was done consciously or by mistake, as in either case his award is void. *Royse's Administrator* v. *McCall, 5 Bush 695*. The position taken by the complainants is, and they contend, that as the umpire was to act "in matters of difference only," his function was to coincide with one or the other of the appraisers or to somehow warp his judgment between the high and low figures that marked their difference. The position is not sound. The manner in which the umpire was to make his appraisal is not thus circumscribed or restricted by the submission agreement. Its limitation goes to his jurisdiction and not to the method of its exercise. Harmony between the appraisers excludes his participation in the appraisal. When they have "matters of difference" he automatically becomes qualified to sit in judgment. He is called an umpire, but, strictly speaking, he is not. An umpire makes his award independent of that of the arbitrators. *Daniel* v. *Daniel, 6 Dana 93; Underhill* v. *Van Cortland, 2 Johns. Ch. 339; Ingraham* v. *Whitmore, 75 Ill. 25*. Here the umpire is required to act with the appraisers in matters of difference. He is a third appraiser. The three are to collaborate,

each using and contributing his own good judgment. If they disagree there is a mistrial; if the three are of one mind, or if any two of them are in accord as to sound value and loss, the award is a finality. Manifestly, it would have been an abuse of authority had the umpire arbitrarily confined himself within the limits of the appraisers' estimates. In *Kirkham* v. *German-American Insurance Co., 92 Kan. 941,* the umpire stipulated that he would confine his appraisal "between the limits fixed by the two appraisers." In holding that the umpire was guilty of a breach of his duty, and that the insured was not bound by the award, the court said: "It is suggested that as the agreement provided that the appraisers should submit to the umpire their 'differences,' it was entirely proper for him to confine his estimates within the limits fixed by them. We think, however, that 'differences,' as here used, means matters about which they were unable to agree, and that when he was called upon to fix a sum, he acted as a juror and was to exercise his own untrammeled judgment." In *Orient Insurance Co.* v. *Harmon, 177 S. W. Rep. 192,* the insured recovered on an award, and in affirming the judgment the appellate court, in disposing of the point here under discussion, said: "Concerning the proposition that the award is not binding upon appellants because the 'umpire did not determine the differences between the two appraisers, but disregarded their findings as to the amount of the loss and damage and made up an independent valuation of his own' which, in certain items, was largely in excess of the amount of damage found by the highest estimate made by either of the appraisers, we think it may safely be said that in so acting the umpire did not exceed the authority conferred upon him. Neither the agreement to arbitrate nor the law made it his duty to adopt the findings of one or the other of the appraisers as to the amount of the loss and damage to items of property about which they differed, or to assess the amount thereof at some sum not to exceed the highest estimate placed upon any particular item by either, as seems to be the contention of the appellants. On the contrary, we think the duty of the umpire under the terms of the arbitration agreement, or as imposed upon him by law, was to ascertain and determine, in the exercise of his own best judg-

ment, the actual amount of the loss and damage to any item of property about which the appraisers had disagreed, independent of the findings of the appraisers, or either of them." In *Bangor Savings Bank* v. *Niagara Fire Insurance Co., 85 Me. 68*, the insured sought to set aside an award, claiming that "the umpire was to adjust difference only," and that "the umpire did not confine himself to the decision of questions of. difference only." The court approved the action of the umpire in calling in outside experts and adopting as his own judgment their estimates of damage as to the disputed items. See, also, *Strome v. London Assurance Corporation, 20 App. Div. 571; affirmed, 162 N. Y. 627; Broadway Insurance Co.* v. *Doying, 55 N. J. Law 569*, and *American Central Insurance Co.* v. *Landau, supra.*

The sound value of item 56 of stock, consisting of five thousand four-page circulars, was agreed upon by the appraisers at $25. It was a total loss. The umpire refused to appraise the loss, because the sound value had not been established to his satisfaction by the production of the order ticket, his position being that in the absence of the order ticket the circulars were to be considered "dead" stock and of no value. It was not within the province of the umpire to pass upon the sound value. As to this there was no matter of difference, and no submission. His duty was to appraise the loss only and his refusal was legal misconduct. *Collings Carriage Co.* v. *German-American Insurance Co., 86 N. J. Eq. 53.* This error of judgment is not, however, to be seized upon as a ground for vitiating the award as a whole. At least, not in this court upon an appeal for equitable relief. In all other respects the appraisers and umpire acted strictly within their respective capacities, and with absolute fairness towards the parties. The complainants ought to be relieved, but only to the extent of the injury. The award could be sent back to the arbitrators for correction, as was done in the last case cited, but as the loss on the circulars was total, and as their duty, consequently, would be merely perfunctory, the court can as well make the adjustment by increasing the amount. Upon tender to the complainants, and refusal upon payment into the court of the amount of the award, plus $25, with interest and costs of

suit, the bill will be dismissed. Otherwise the award will be set aside, with costs.

There was another item, No. 17, consisting of nine summer rollers, upon which the appraisers fixed a sound value of $6.70 and $5.16, respectively, and loss accordingly, concerning which there was much testimony and considerable discussion. The umpire regarded the rollers as obsolete and worthless and refused to allow anything for sound value or loss. The matter of difference related primarily to the sound value, and one proper for the umpire to pass upon. The evidence is that the life of summer rollers is one season only, and as this had been spent during the summer preceding the fire, the umpire, it would seem, correctly decided they had no value.

It was said on the argument and asserted in the brief of complainants' counsel that on a few minor articles of little value, the umpire refused to allow for loss, although the appraisers had estimated some trifling damage. I have carefully gone over the items of the schedule and find them all accounted for, but if there are any such instances where the appraisers have disagreed, it was entirely proper for the umpire to disregard their estimates, if, in his honest opinion, there was no loss.