At the conclusion of the hearing of the above-entitled cause I decided that the award in question should be set aside for the reason that the umpire had prematurely assumed authority to act in the premises. Counsel for the defendants urges that, inasmuch as my decision does not find the umpire guilty of fraud, I should refer back to the appraisers and umpire the consideration of the amount of loss and damage which is the subject-matter of the controversy between the aforesaid parties. Counsel for complainant has urged that a *Page 694 
new appraiser should be appointed by the insurance companies, and a new umpire appointed, either in accordance with the terms of the appraisal agreement or by the court.
The insurance policy provides that the companies shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate to be made by the insured and the company, or, if they differ, then by appraisers, as provided in said policy. The provision relating to disagreement between the parties is as follows:
"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expense of the appraisal and umpire."
The agreement for submission to the appraisers provides that the two appraisers shall first select a competent and disinterested person as umpire, and the said two appraisers together shall estimate and appraise the loss, stating separately sound value and damage to each item, and failing to agree, shall submit their differences only to the umpire; and award in writing, so itemized, of any two, when filed with the insurance companies, shall determine the amount of sound value and of loss or damage. The clause in the fire insurance policy provides that the appraisers contemplated to be appointed thereunder shallsubmit their differences to the umpire. It will be observed that the word only, after the word differences, does not appear in the aforesaid clause of the insurance policy. *Page 695 
The agreement for submission to the appraisers Weinstock and Silverman was in substitution for the appraisement clause of the insurance policy, and, being somewhat different from it, in effect, abrogated it. Broadway Insurance Co. v. Doying,55 N.J. Law 569 (at p. 571).
The proofs in the case indicate that neither Weinstock, the appraiser appointed by the insurance companies, nor Silverman, the appraiser appointed by the insured, performed the duties devolving upon them in the manner required of them. The umpire appears to have been imbued with the idea that he was warranted in determining the sound value of the property of the insured as well as the actual direct loss and damage caused thereto by fire, in disregard of the appraisers and their rights in the premises, and he assumed the right to perform that which he considered to be his duty in the premises, prior to having been advised that the appraisers were in disagreement as to the loss and/or damage suffered by the insured on the whole or part of the property insured, and prior to having been advised as to the differences (if any) of said appraisers. I was impressed, at the hearing of the cause, with the animus that appeared to me to exist as between Weinstock and Silverman (the appraisers), and Ginsberg (the umpire) and Silverman (one of the appraisers).
Ginsberg should not, in my judgment, be continued as umpire; and I am impressed with the advisability and propriety of the insurance company and the insured selecting appraisers other than Weinstock and Silverman. If the matter should be referred back to the aforesaid appraisers and umpire, I am constrained to believe, from what I observed of their demeanor as they testified in court, and the testimony given by them, that neither the company nor the insured could reasonably expect to obtain from them such an unbiased judgment as should be expected of them. No person who has formed an opinion, or is not open-minded in respect to the subject-matter submitted to him for consideration and determination, should be permitted to serve either as appraiser or umpire. While I cannot adjudge, from the proofs in this case, that either of the appraisers or the umpire acted *Page 696 
in a fraudulent manner, nevertheless, each of them, in my judgment, acted in an injudicious manner; they manifested little regard of the importance of the duty entrusted to them, and Weinstock and Ginsberg exhibited such an acrimonious disposition of hostility towards Silverman, the latter exhibiting a like feeling toward them, that a fair, unbiassed determination may not now, in my judgment, be expected of any of them. The animus and acrimony to which I have adverted was particularly patent to me from their mannerism while testifying. As stated by me at the conclusion of the hearing, the umpire unwarrantably assumed the right to enter upon a consideration and determination of the subject-matter of the appraisal agreement before it was time for him to do so; his testimony, as well as the testimony of the two appraisers, evidences that neither of said parties assumed their responsibilities with that degree of seriousness which they, who were called upon to perform a quasi-judicial function, should have manifested. To properly perform the duties devolving upon them, the appraisers and umpire should be free from the implication or innuendo of bias against either party to the controversy, and against each other, or of having formed an opinion in other than a judicious manner; they should be open-minded, substantially indifferent in thought and feeling toward the parties, and toward each other, and without bias.
The policy of insurance does not require that the appraisers shall concur in summoning the umpire to settle their differences, but, whenever, in fact, a disagrement arose between them, and such disagreement was made known to the umpire, the latter became qualified to act as to "differences only" between the appraisers, and, with either of the appraisers, might make a valid appraisement of the matters on which the appraisers were in disagreement. Broadway Insurance Co. v. Doying, supra (atpp. 572, 573).
The agreement for submission to the appraisers provides that the appraisers therein named shall select a competent anddisinterested person to act as umpire. In my judgment, an umpire, to be disinterested, should be impartial and *Page 697 
open-minded. It would be futile to expect Umpire Ginsberg (if the matter were referred back to him) to be impartial and open-minded, inasmuch as he has heretofore (as he says) made a full and fair investigation of the subject-matter and formed his conclusions thereon. He could not reasonably be expected to apply himself anew to the matter which may be submitted to him to be acted upon judiciously and form a conclusion differing from that which he heretofore formed.
Appraiser Weinstock did not, together with Appraiser Silverman, estimate and appraise the loss, stating separately sound value and damage to each item; nor did Appraiser Silverman, together with Appraiser Weinstock, make such estimate and appraisal. Both agreed on some items, but they had not concluded their endeavors with a view of agreement upon all matters to be considered by them, when the umpire, as hereinbefore stated, took it upon himself to assume authority to estimate and appraise the loss on his own account; but even the umpire neglected to state separately sound value and damage toeach item. The umpire relied considerably upon the work performed by Appraiser Weinstock, crude though it was. Where an umpire exceeds his authority, the effect of his act is the same whether it was done consciously or by mistake, as, in either case, his award is void. Dennis v. Standard Fire InsuranceCo., 90 N.J. Eq. 419 — at p. 422 (citing Royse's Adm'r v.McCall, 5 Bush. 695). Manifestly, the words "differences only," as used in the agreement for submission to the appraisers, mean matters the appraisers were unable to agree upon, and until their disagreement is made known to the umpire, the latter is without authority to act. The umpire did not confine himself to the determination of "differences only" of the appraisers, and therefore his signature to the award is without vitality.Collings Carriage Co. v. German-American Insurance Co.,86 N.J. Eq. 53.
While both appraisers were not required to attend with or before the umpire after such appraisers disagreed, if such were the fact (American Central Insurance Co. v. Landau, 62 N.J. Eq. 75
— at p. 100), nevertheless, the umpire should *Page 698 
have definitely ascertained from the appraisers the matters as to which they were in disagreement. The appraisers severally, and the umpire, differed radically as to the principle upon which the loss should be ascertained. Counsel for the insurance company argued that the method followed by Appraiser Weinstock and Umpire Ginsberg was in accordance with the requirement of the policy and of the agreement for submission to the appraisers. It appears, however, that said appraiser and umpire did not state separately sound value and damage to each item of property constituting the loss, and, consequently, the amount of sound value and of loss or damage to each item was not ascertained by said appraiser and umpire "according to the actual cash value of the said property at the time of the occurrence of said fire with proper deductions for depreciation, however caused." The award signed by Appraiser Weinstock and Umpire Ginsberg states that they had appraised and determined the actual cash value "of each item of said property on the 15th day of December, 1925, and the actual direct loss and damage thereto by the fire on that day to be as follows (see itemized schedule attached hereto) to wit:" but noitemized schedule was attached to the award, nor was any itemized schedule prepared by said parties.
If the complainant and defendants do not coincide with my view that a new agreement for submission to appraisers should be entered into, in lieu of the one heretofore entered into between the parties, designating therein appraisers other than Weinstock and Silverman, which new appraisers, by the express terms of the agreement, will be required, before entering upon the performance of their duties, to "first select a competent and disinterested person who shall act as umpire," counsel for the respective parties may advise me thereof, and I will then advise such order as I may deem appropriate in the premises. *Page 699